Michael L Deamer No. 844
Attorney for Plaintiff
139 East South Temple, Ste 300
Salt Lake City, Utah 84111
Telephone 801-531-0441
Fax 801-531-0444
Email: mldeamer@integra.net

---

# IN THE UNITED STATES DISTRICT COURT

## FOR THE  DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| EDWARD JOHNSON, an individual | : | |
| Plaintiff, | : | |
| v. | : | COMPLAINT and JURY DEMAND |
| SECTOR 10, INC, a corporation, SECTOR 10 HOLDINGS, an unknown business entity, PERICLES DEAVILA, an individual, LARRY MADISON, an individual and JANE and JOHN DOES I-X and DOES ENTITIES I-V, | :  : | Civil No. |
| Defendants. | : | Judge: |
| | : | |

---

Plaintiff, Edward Johnson, for causes of action alleges:

## JURISDICTION AND VENUE

1.    The claims hereinafter stated arise under the laws of the United States, particularly the

Securities Act of 1933, as amended (hereinafter "the 1933 Act"), especially Sections  17(a) and

1

22a (15 U.S.C. §77(a) et seq,), the Securities and Exchange Act of 1934 as amended (hereinafter "the 1934 Act"), especially Sections 10(b), 20(a) and 27a (15 U.S.C. §78(aa), et seq. including (j) (r)and (t)), Securities and Exchange Commission Rule 10b-5 (17 C.F.R. §240.10b-5), the Utah Uniform Securities Act (hereinafter "Utah Securities Act"), §61-1-1 et seq., Utah Code Annotated (1953), as amended, as well as under state law and common law for breach of contract, fraud, negligent misrepresentation.

2.        Jurisdiction of this court is invoked under the provisions of §22(a) of the 1933 Act and §27 of the 1934 Act (15 U.S.C. § 78aa).

3.        The jurisdiction of this court is further invoked under and pursuant to the provisions of 28 U.S.C. §1331 which grants this court original jurisdiction of claims arising under the laws of the United States.

4.        Supplemental  Jurisdiction of this court is invoked under 28 U.S.C. § 1367 (a) as the state law claims are so inter-related with the federal claims that they form part of the same case or controversy and derive from the same common operative facts.

5.        The jurisdiction of this Court is further invoked as the parties hereto irrevocably consented to the jurisdiction of the federal courts in Salt Lake County, Utah and consented to grant such court jurisdiction "over the persons of such Parties…" for the purposes of any dispute arising out of or from the written agreement of the parties hereto. See Exhibit A hereto, paragraph 5.6 thereof. The amount in controversy exceeds $75,000.

6.      Venue is properly laid in the Central Division of the United Stated District Court for the District of Utah under §22 of the 1933 Act and §27 of the 1934 Act on the grounds that Defendants transact business within said district, that the violations of laws alleged herein accrued and were implemented in whole or in part within the above described district and division.

## THE PARTIES

7.      Plaintiff Edward Johnson (herein "Johnson") is licensed real estate agent who resides in Summit County, Utah and works in Salt Lake County, Utah.

8.      Defendant Sector 10, Inc does business in Salt Lake County, and is a corporation whose registration to do business in the State of Utah as a domestic corporation or a foreign corporation doing business in Utah expired on April 11, 2006. Sector 10 is a publicly traded company (NASDAQ Symbol: SECI) and is herein collectively with Sector 10 Holdings referred to as "Sector 10".

9.      Defendant Sector 10 Holdings does business in Salt Lake County through Sector 10, Inc and is a business entity of unknown nature and origin that purportedly is the parent company of Sector 10, Inc. It is also collectively referred to herein as "Sector 10".

10.      Defendant Pericles DeAvila (herein "DeAvila") is an individual residing in Davis County, Utah and a principal owner, officer (CEO), director and a controlling person of both Sector 10 entities.

11.     Defendant Larry A. Madison (herein "Madison") is an individual residing outside the State of Utah and a principal owner, officer (Chief Financial Officer), director and a controlling person of both Sector 10 entities.

12.     Defendants Jane and John Does I through X and Doe Entities I-V are unknown individuals or business entities that may have participated in the acts complained of herein. Plaintiff will seek to amend its complaint once their true identities are known.

FACTS

13.     Sector 10 claimed to have developed a Post 911 device that would be located in commercial buildings to aid people in trying to escape from distressed buildings on fire, under attack or in imminent possibility of collapsing.

14.     Sector 10 claimed to have established a Telecommunications Network that would perform part of their monitoring process to save lives as well as provide a vehicle for companies to do their marketing and other electronic communications.

15.     On or about April 16, 2008, Johnson was invited by defendants to provide short term financing in the amount of $200,000 to Sector 10 who would purportedly use the borrowed funds to acquire or expand Sector 10's existing Telecom Network business.

16.      Defendants promised to repay said funds within 9 months with interest at prime as quoted by the Wall Street Journal plus 1 percent.  The agreement could be extended for one 4 month period.  The written agreement is attached hereto as Exhibit A and by reference made a part hereof. It is referred to herein as the "Loan Agreement".

17.     In order to induce Johnson's financial involvement, Defendants offered to sweeten the deal by granting Johnson One Percent (1.00%) of the monthly cash flow revenue of Sector 10 for Five (5) Years. See Exhibit A, Para 2.4

18.      To further induce Johnson's participation, Defendants further provided that Johnson would receive warrants for 500,000 shares of Sector 10 for a strike or exercise price of between $.75 cents a share to $1.00 per share. See Exhibit A, Para 2.6

19.     To further induce Johnson to loan money to Sector 10, Johnson was also promised by Defendants that Johnson would have National Distribution Rights and would earn commissions on the installation of the device/network systems in various facilities throughout the country.

20.     Before Johnson agreed to accept said proposal, Defendants provided Johnson with a written appraisal valuing Sector 10's Network at between $4.5 and $6 million dollars without electronic traffic and $20 million with electronic traffic.

21.     In specific response to Johnson's oral request for financial information on the ability of Sector 10 to repay, Defendants provided Johnson with historic (and not forward looking) financial statements showing that Sector 10 had substantial assets and the ability to repay Johnson's loan of $200,000. A copy of said financials are attached hereto as Exhibit B and by reference made a part hereof. Said financial statements with notes are referred to herein as the "financials".

22.     Johnson as part of his due diligence visited a purported production plant of Sector 10 in Logan, Utah and received Private Placement memoranda from defendants.

23.     Johnson never signed any Private Placement memoranda and said Private Placement memoranda received from Defendants made no mention of the proposal to Johnson or Johnson's  enhanced Loan Agreement (Exhibit A) and are believed to have no relevance to the transactions complained of herein other than to deceive and mislead Johnson.

24.     In full reliance on the statements of Defendants and the materials provided by Defendants referred to above, Johnson accepted Defendant's proposal on May 11, 2008, delivered to Sector 10 the sum of $200,000 and entered into the Loan Agreement attached hereto as Exhibit A.

25.     At the same time, Defendants approached Johnson and offered to sell him $50,000 of its publicly traded stock. Johnson paid Defendants $50,000 for the stock and received a certificate of stock on June 6, 2008 containing a Restrictive Legend, which stock was not free trading stock.

26.     On May 22, 2008, Johnson set up a Utah Limited Liability Company in anticipation of receiving national distribution rights and commissions from Sector 10.

27.     Defendants failed to repay the $200,000 loan when it became due on February 10, 2009.

28.     The loan was automatically extended by its own terms to May 11, 2009 and was not repaid in any amount.

6

29.     Without waiver of any rights, Johnson gratuitously consented to another extension to repay the loan to August 11, 2009. On August 21, 2009, Johnson demanded in writing payment in full. (Exhibit C hereto). Defendants have failed to repay the principal and interest of said loan. No part of the revenue from the Loan Agreement  has been paid as of the date hereof.

30.     Johnson believes and therefore alleges herein that he has been defrauded by Defendants as more fully set forth herein.

31.     The conspiracy to defraud Johnson herein was implemented by means and instrumentality of interstate commerce, including telephone contacts, electronic email and the use of mail in which untrue statements of material facts were made and in which the Defendants omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

32.     The proposed transaction as evidenced by the Loan Agreement (Exhibit A) with Defendants is a "security" and "investment contract" within the meaning of the 1933 Act and the 1934 Act and the Utah Securities Act (UCA 61-1-13 (1)(x)) in that Johnson invested a sum of money with the expectation of profits to come solely from the efforts of others engaged in the Telecom Network business.

33.     The scheme was to consist of and throughout its existence included various misrepresentations of material facts concerning the prospects of financial return, the soundness of the program, the use of monies obtained from Johnson, some of which were immediately diverted and paid to other investors in the scheme, and omissions of material facts necessary to

make the statements made not misleading in light of the circumstances and other acts, practices and courses of business designed to defraud Johnson.

34.     Such scheme was a sale or offer for sale of a security under § 2 of the 1933 Act and defendants are "persons" within the meaning of UCA 61-1-13 (1) (s).

FIRST CAUSE OF ACTION

(Breach of Contract)

35.     Johnson incorporates the allegations of Paragraphs 1 through 34 hereinabove set forth by reference and makes them a part of this action.

36.     Defendants have materially breached the Loan Agreement (Exhibit A) with Johnson by failing to pay the principal of $200,000 and accrued and accruing interest thereunder of at least $23,369.80 as of January 2010 (per diem of $29.87) when due, together with other material obligations of said loan Agreement.

37.     Johnson is entitled to judgment against Defendants for Sector 10's material breaches of the Loan Agreement in amounts to be established by the Court of at least for $223,369.80 together with accruing interest, reasonable attorney's fees, court cost and expenses.

WHEREFORE, Johnson prays as hereinafter set forth.

SECOND CAUSE OF ACTION

(Violations of the Securities Act of 1933)

38.     Johnson alleges paragraphs 1 through 37 hereinabove set forth and by reference makes them a part of this cause of action.

39.     The Loan Agreement (Exhibit A) is a "Security" or "Investment Contract" and as such must be registered or have an applicable exemption from registration before it can be offered to Johnson.

40.     Defendants are issuers, dealers, or underwriters within the meaning of the Securities Act of 1933 and have violated Federal and State law by selling an unregistered Security without: (a) a registration statement being in effect, (b) without providing Johnson a prospectus with the information required by 15 U.S.C. 77j, or (c) without an applicable exemption, and as such are therefore liable to Johnson for full rescission and  refund of all funds paid by Johnson to Defendants, in amounts to be established by the Court.

41.     Johnson is entitled to judgment for $250,000 against Defendants for the unlawful sale of  of an unregistered security.

WHEREFORE, Johnson prays as hereinafter set forth.

THIRD CAUSE OF ACTION

(Violations of §15 of the Securities Act of 1933)

42.     Johnson alleges paragraphs 1 through 41 hereinabove set forth and by reference makes them a part of this cause of action.

43.     Defendants and Jane and John Does 1 through 10, and Doe Entities I-V by and through stock ownership, agency, contract, agreements and otherwise were controlling persons within the meaning of §15 of the 1933 Act and as such violated §12 of the 1933 Act as alleged in the above-cited causes of action.

9

44.        Said Defendants are jointly and severally liable to Johnson for all amounts invested by Johnson, lost profits, interest and court costs.

WHEREFORE, Johnson prays as hereinafter set forth.

FOURTH CAUSE OF ACTION

(Violation of §17(a) of the Securities Act of 1933)

45.        Johnson alleges paragraphs 1 through 44 hereinabove set forth and by reference makes them a part of this cause of action.

46.        In connection with the offer and sale to Johnson of the security within the meaning of §2(1) of the 1933 Act as alleged above, Defendants by use of means and instrumentalities of transportation and communication in interstate commerce and by use of telephone and mails directly and indirectly:

a.        Employed devices, schemes and artifices to defraud Johnson;

b.        Obtained from Johnson money by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made in light of the circumstances under which they were made not misleading; and

c.        Engaged in transactions, practices and a course of business which operated as a fraud and a deceit upon Johnson in violation of §17(a) of the 1933 Act.

10

47.       Johnson reasonably and justifiably relied upon the conduct and representations and omissions of Defendants and was injured thereby in an amount of money invested in the scheme, together with lost profits, court costs and expenses.

48.       In the alternative, Johnson is entitled to recover damages from Defendants jointly and severally in the amount of $ 300,000, together with interest thereon.

WHEREFORE, Johnson prays for judgment as hereinafter set forth.

### FIFTH CAUSE OF ACTION

(Violations of §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5)

49.       Johnson alleges paragraphs 1 through 48 hereinabove set forth and by reference makes them a part of this cause of action.

50.       Defendants directly and indirectly by the use of means and instrumentalities of interstate commerce and by reason of the misrepresentations, omissions, acts and practices set forth above:

a.       Employed a device, scheme or artifice to defraud Johnson;

b.       Made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made not misleading; and

c.       Engaged in acts, practices and courses of business which operated as a fraud and deceit upon Johnson.

51.      The statements and facts upon which Johnson relied were material facts and statements, were false when made and were made by Defendants recklessly or with the knowledge of Defendants that said facts were false, and were made to induce Johnson's reliance thereon and Johnson did rely on to his financial loss and detriment, which facts include but are not limited to:

a.      The Networks "were a done deal" meaning they were already in place, when in fact said systems had not been purchased or implemented anywhere on a commercial basis.

b.      The Networks had a value of between $4-6 million dollars without electronic traffic and $20 million with electronic traffic when in realty there was no system in place and the documents accompanying the appraisals contained a map showing Network systems over the entire United States were materially false and misleading because no such systems existed. The Network did not have a value of at least $4-6 million let alone $20 million.

c.      The appraisal of the Network claimed that there were six (6) servers already in place. There were no servers in place at the time Johnson delivered his funds to Defendants.

e.      The historic financial Statements attached hereto as Exhibit B purportedly demonstrate that Sector 10 had assets and the ability to repay Johnson's loan when in fact, Sector 10, Inc, the maker of the loan, had no assets or substantially fewer

assets. In the alternative, the financials were not financials of Defendant Sector 10, Inc in the first place, but of another entity when given to Johnson. Said financials are believed to be false and misleading in that Sector 10 (all entities) had no such assets. Said statements do not purport to be forward looking but are historical financial statements.

f.       Defendant DeAvila expressly represented to Johnson that the financials (Exhibit B) were "my financials" meaning they were the financial statements of Sector 10, Inc, which DeAvila purportedly owned or controlled.

g.       Johnson would be repaid his principal with interest and profit sharing when in fact he has received nothing.

h.       That once Johnson was repaid he would receive a percentage of Sector 10's monthly receipts and warrants for additional stock, which he has not received.

i.       Johnson was told by Defendants that if he loaned the money, Defendants would sweeten the deal and "make it worth his while", which has not occurred or been worth his while as he has lost his funds.

j.       Defendants systems device is commercially viable and works, when in fact it does not.

52.       Defendants activities and material misrepresentations set forth above constitute separate violations of §10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

53.     Defendants engaged in said conduct intending and knowing that said conduct would deceive, manipulate and defraud Johnson.

54.     Johnson reasonably and justifiably relied on the conduct and representations of Defendants, including the misrepresentations and omissions and other violations of §10(b) and Rule 10b-5 and was thereby damaged in the amount of $ 300,000.

55.     Johnson is entitled to recover from Defendants, jointly and severally, damages to be established by the court of at least $300,000 together with interest thereon, attorney's fees and court costs.

WHEREFORE, Johnson prays for judgment as hereinafter set forth.

SIXTH CAUSE OF ACTION

(Violations of §20 of the Securities Exchange Act of 1934)

56.     Johnson alleges paragraphs 1 through 55 hereinabove set forth and by reference makes them a part of this cause of action.

57.     Defendant Sector 10 Holdings directly and indirectly controlled the conduct of the business operation and the conduct of all Defendants at the time they violated §10 of the 1934 Act and Rule 10b-5 promulgated thereunder as alleged above.   Said Defendant is accordingly liable under the provisions of §20 of the 1934 Act to the same extent as would be Defendant the Sector 10, Inc.

WHEREFORE, Johnson prays for judgment as hereinafter set forth.

SEVENTH CAUSE OF ACTION

14

(Violations of the Utah Uniform Securities Act)

58.      Johnson alleges paragraphs 1 through 57 hereinabove set forth and by reference makes them a part of this cause of action.

59.      The investment scheme of Defendants as above alleged constitutes a security within the meaning of the Utah Securities Act §61-1-13.

60.      Defendants actions amount to a sale of a security within the State of Utah pursuant to Utah Securities Act §61-1-13.

61.      Defendants participation in the sale of said securities within the State of Utah by the use of schemes to defraud by making untrue statements of material facts and/or omitting material facts in the representations as aforementioned constitute violations of §61-1-1 and 2 of the Utah Securities Act.

62.      Said Loan Agreement provided by these Defendants to Johnson was not exempt under Utah laws and was sold without being registered in the State of Utah.

63.      These Defendants actions in selling securities before they were properly registered in this state are a violation of §61-1-7 of the Utah Securities Act.

64.      Because of Defendants violations of the Utah Securities Act, Johnson has been damaged and is entitled to exercise his rights and remedies in law or equity including, but not limited to, those remedies outlined in U.C.A. §61-1-22 which provides for all actions in law or equity including, but not limited to, the recovery of consideration paid for the security,

together with the statutory interest from the date of payment plus costs, in a total amount of $300,000.

65.    Johnson is entitled to have his damages TREBLED under U.C.A. §61-1-22.

66.    Defendants' violations of Utah securities laws were done with willful and wanton disregard for Johnson's rights and for such intentional, reckless, willful, wanton and malicious conduct Johnson is entitled to exemplary or punitive damages in the sum of $300,000.00.

67.    Defendants are jointly and severally liable to Johnson for damages under UCA § 61-1-22 (1) and (4)

68.    Johnson is entitled to recover reasonable attorney's fees from defendants under UCA §61-1-22 of the Utah Securities Act.

WHEREFORE, Johnson prays for judgment as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### (Common Law Fraud)

69.    Johnson alleges paragraphs 1 through 68 hereinabove set forth and by reference makes them a part of this cause of action.

70.    Defendants' misrepresentations and in particular those misrepresentations set forth in paragraph 51, which concern presently existing material facts were false when made and which Defendants knew to be false or said misrepresentations were made recklessly knowing they had insufficient knowledge on which to base such misrepresentations. In addition,

Defendants intentionally withheld facts as set forth above in paragraph 51. The misrepresentations and omissions were intentionally made for the purpose of inducing Johnson, in reliance thereon, to enter into the investment transaction described above.

71.     Johnson reasonably and justifiably relied upon said misrepresentations in ignorance of their falsehood and without knowledge that the omitted facts had been withheld and was thereby induced to make the loan as evidenced by the Loan Agreement and purchase the security offered by Defendants, all to the damage of Johnson in amounts to be established by the court of not less than $300,000.

72.     Because of the wanton, intentional and malicious nature of these Defendants conduct, Johnson is entitled to recover punitive and exemplary damages in an amount of not less than $300,000.00.

73.     Johnson is entitled to judgment against defendants, jointly and severally, in an amount of not less than $300,000 and punitive damages in an amount of not less than $300,000.00.

WHEREFORE, Johnson prays for judgment as hereinafter set forth.

NINTH CAUSE OF ACTION

(Negligent Misrepresentation.

74.     Johnson alleges paragraphs 1 through 73 hereinabove set forth and by reference makes them a part of this cause of action.

75.        Defendants and each of them had a duty to disclose to Johnson truthfully the risks involved with said investment (Exhibit A), that said investment was not a registered security, nor was it exempt under any applicable federal or state securities law and that the investment involved unusual risk and that it was likely that Johnson would lose all of his investment, that said investment was not registered under any applicable federal or state securities law, nor was there any applicable exemption from registration, all of which Defendants failed to disclose to Johnson and all of which were carelessly and negligently made.

76.        The representations and omissions described herein were material to the investment decision made by Johnson.

77.         Defendants breached their duties to Johnson which actually and proximately caused damage to Johnson in the loss of his entire investment, together with interest thereon, lost profits and consequential damages.

78.        Johnson is entitled to recover the sum of $300,000 from Defendants, jointly and severally, together with interest thereon, attorney's fees, lost profits and consequential damages.

WHEREFORE, Johnson prays for judgment against Defendants, jointly and severally, as follows:

1.        On Johnson's First Cause of Action for Breach of Contract judgment in the amount of $223.369.80, together with interest thereon and Johnson's attorney's fees and court costs.

18

2.        On Johnson's Second Cause of Action for judgment against Defendants in favor of Johnson in the amount of $250,000, together with interest and court costs.

3.        On Johnson's Third Cause of Action for judgment jointly and severally against Defendants in amounts to be established by the court.

4.        On Johnson's Fourth Cause of Action for judgment in the amount of $300,000, together with interest and court costs.

5.        On Johnson's Fifth Cause of Action for Rule 10B-5 violations, judgment against Defendants jointly and severally in the amount of $300,000, together with attorney's fees, interest and court costs.

6.        On Johnson's Sixth Cause of Action for judgment against Defendant Sector 10 Holdings in the amount of $300,000, together with interest and court costs.

7.        On Johnson's Seventh Cause of Action for judgment in the amount against Defendants of $300,000, together with interest and court costs, Johnson's reasonable attorney's fees, TREBLING all damages, and for punitive damages in an amount of not less than $300,000.00.

8.        On Johnson's Eighth Cause of Action for judgment against Defendants jointly and severally in the amount of not less than $300,000, for punitive damages in the amount of not less than $300,000.00, together with attorney's fees, court costs and expenses.

9.      On Johnson's Ninth Cause of Action for judgment against Defendants jointly and severally in the amount of $300,000, together with attorney's fees, interest thereon and court costs.

10.      On all of Johnson's causes of action for Johnson's reasonable attorney's fees, court costs, expenses and post judgment interest and for such further and additional relief as the court deems justified under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Johnson hereby demands a jury trial on all issues alleged herein.

Dated this 8th day of February 2010.

/s/ Michael L Deamer
Michael L. Deamer, Attorney for Plaintiff

Plaintiff's Address:

3234 Creek Road
Park City, Utah 84098